UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RAHIM SALAAM,
         Plaintiff,

Case No. 5:05-cv-097

-v-

HONORABLE PAUL L. MALONEY
HONORABLE JOSEPH G. SCOVILLE

KENNETH MCKEE,
         Defendant.

## OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION OVER OBJECTIONS

This Court has before it a Report and Recommendation (Dkt. No. 85) and Objections (Dkt. No. 86).

I.  BACKGROUND

Plaintiff Salaam is a prisoner in the custody of the Michigan Department of Corrections (MDOC). On June 23, 2005, Plaintiff filed a pro se civil action against Defendant McKee under 42 U.S.C. § 1983. At the time he filed the complaint, Plaintiff was a level II prisoner housed at the Bellamy Creek Correctional Facility (IBC) in Ionia, Michigan. Plaintiff alleged that Jumu'ah (religious service) for level II prisoners of the Muslim faith was scheduled between 11:30 a.m. and 12:30 p.m. and that the Jumu'ah for level IV prisoners was scheduled between 1:00 p.m. and 2:00 p.m. Plaintiff complained that the time slot for level II prisoners is not consistent with Islamic practice. Plaintiff alleged IBC is the only multilevel prison in MDOC that did not allow both level II and level IV prisoners to attend Jumu'ah at the time prescribed by Islamic practice. In the initial complaint, Plaintiff requested injunctive relief in the form of an order requiring the prison facility to hold religious services for all classifications of prisoners at the time required by his religion. (Dkt. No. 1).

Plaintiff Salaam filed an amended complaint on July 8, 2005 requesting the same relief, adding "and any other relief deemed appropriate by the Court," and clarifying that Defendant's actions violated his "U.S. Const. Amend I (Right to freely exercise my religious beliefs)." (Dkt. No. 7). Plaintiff later moved to amend his amended complaint after the Magistrate Judge issued an earlier Report and Recommendation. In an opinion and order dated September 7, 2006, Judge Bell granted in Plaintiff's motion to amend his first amended complaint. The order specified that paragraph VI of plaintiff's first amended complaint now included a claim for monetary damages against Defendant McKee in his individual capacity based on the alleged violations of Plaintiff's rights under the Free Exercise Clause of the First Amendment (Dkt. No. 76). The order further explained "plaintiff's motion to amend and supplemental motion to amend are DENIED in all other respects." (emphasis in original). (*Id.*). Finally, the order dismissed Plaintiff's claims for injunctive relief as moot because Plaintiff has been transferred to a different facility. (*Id.*). As a result, the only requested relief that remains is for monetary damages against Defendant McKee in his individual capacity.

II. DEFENDANT MCKEE'S SECOND MOTION FOR SUMMARY JUDGMENT

Defendant McKee filed a second motion for summary judgment (Dkt. No. 77). Defendant argues the schedule of religious services is reasonably related to a legitimate penological interest. Second, Defendant argues he is entitled to qualified immunity because the right allegedly violated has not been clearly established.

Plaintiff Salaam offered three arguments in his response to the motion. (Dkt. No. 81). First, Plaintiff argues Islamic practices clearly establish when Jumu'ah must be held and that the time currently scheduled for level II prisoners does not comport with those practices. Second, Plaintiff

argues Defendant was aware that Islamic practice requires Jumu'ah to be held after the sun reaches its zenith and intentionally scheduled the service for level II prisoners at a time not consistent with that requirement. Plaintiff reasons, because Defendant acted under color of law in a manner which violates the Constitution, he is not entitled to immunity. Finally, Plaintiff argues the schedule for services is not reasonably supported by a legitimate penological interest because level II and level IV prisoners already co-mingle in other areas of the program building. Plaintiff argues Defendant failed to use the "least restrictive means" to advance the government's interest as required under Section 3 of the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA).

III. REPORT AND RECOMMENDATION

After being served with a Report and Recommendation (R&R) issued by a Magistrate Judge, a party has ten days to file written objections to the proposed findings and recommendations. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A district court judge reviews de novo the portions of the R&R to which objections have been filed. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). Only those objections that are specific are entitled to a de novo review under the statute. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam) (holding the district court need not provide de novo review where the objections are frivolous, conclusive or too general because the burden is on the parties to "pinpoint those portions of the magistrate's report that the district court must specifically consider"). Failure to file an objection results in a waiver of the issue and the issue cannot be appealed. *Sullivan*, 431 F.3d at 984. *See also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (upholding the Sixth Circuit's practice). The district court judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).

This Court has conducted a de novo review. Having read the complaint, the report and recommendations, the objections and relevant authority, the Report and Recommendation is adopted over the objections.

The Magistrate Judge recommends granting Defendant McKee's motion for summary judgment. The Report and Recommendation points out the only evidence offered by Plaintiff in opposing the motion is a grievance and responses to three requests for admissions. (R&R at 5). The Magistrate Judge concludes the schedule for religious services was reasonably related to a compelling government interest. (*Id.* at 11). Specifically, the schedule for religious services was motivated by a desire to keep level II and level IV prisoners separated for security reasons. (*Id.*). The Magistrate Judge asserts that Plaintiff failed to dispute the conclusion that he had alternative means to practice his faith, an argument raised in Defendant's motion for summary judgment. (*Id.* at 12).

The Magistrate Judge also concludes Defendant McKee would be entitled to qualified immunity because the right Plaintiff claims was violated has not been clearly established. (R&R at 15). The Magistrate Judge explains Plaintiff failed to present any legal authority establishing a right under the First Amendment to attend religious services later in the afternoon. (*Id.*). The Magistrate Judge notes that Plaintiff's complaint, as amended, did not allege a claim under RLUIPA and therefore Plaintiff's attempt to apply the "least restrictive means" test is misplaced. (*Id.* n. 9).

Plaintiff's objection is not a model of clarity. Plaintiff includes six numbered objections. Prior to the first numbered objection, Plaintiff argues the Supreme Court's decision in *Cutter v. Wilkinson*, 544 U.S. 709 (2005) (interpreting the RLUIPA) provides a reason to reject the Report and Recommendation. (Objection at 1). Plaintiff asserts that he cited the RLUIPA in his response

to the first motion for summary judgment. Other than this, Plaintiff offers no objections to the legal tests upon which the Magistrate Judge basis his recommendations. Although Plaintiff may have discussed RLUIPA in his earlier briefs, his amended complaint does not seek relief under RLUIPA, but under the Free Exercise Clause of the First Amendment. Accordingly, the Magistrate Judge relied on the appropriate constitutional test rather than RLUIPA's statutory test. *See Cutter*, 544 U.S. at 723 n. 11; *Charles v. Frank*, 101 F.App'x 634, 635 (7th Cir. 2004) (per curiam). Furthermore, Plaintiff overlooks that the Magistrate Judge concludes Defendant would be entitled to summary judgment even if the amended complaint alleged such a claim. (R&R at 15 n. 9).

Plaintiff's first argument alleges the Magistrate Judge should have considered documents other than Plaintiff's response to the motion for summary judgment. (Objection at 2). Plaintiff objects because, in his response to the motion, he referenced his brief in support of his motion to amend the complaint (Dkt. No. 15) and his response to the first motion for summary judgment (Dkt. No. 29). Plaintiff argues the Magistrate Judge should have considered all of those documents when determining whether there was a genuine issue of material fact.

Plaintiff's objection is not a reason to reject the Report and Recommendation. The citations in Plaintiff's response to the second motion for summary judgment refer to the prayer schedule attached to his motion to amend his complaint and the grievance form attached to his response to the first motion for summary judgment. The Magistrate Judge did consider the grievance form. As will be explained in more detail later, the prayer schedule does not create a genuine issue of material fact.

Plaintiff's second objection is not a reason to reject the Report and Recommendation. Plaintiff's second objection attempts to clarify that the program building is not used by inmates of

all security levels, only levels II and IV. While interesting, this clarification does not create a genuine issue of material fact or undermine any of the legal conclusions in the Report and Recommendation.

Plaintiff's third objection relates to evidence showing that level II and level IV prisoners do interact within the programs building. (Objection at 3). Read liberally, Plaintiff's assertion might undermine the security rational for holding two different Jumu'ah services. Plaintiff argues his grievance establishes that inmates at both level II and level IV occupy the program building at the same time, in the gym and in the restroom, and have contact with each other.

Taken in a light most favorable to Plaintiff, the documents do establish a dispute over whether level II and level IV prisoners use the program building at the same time. However, the documents Plaintiff relies upon do not undermine the Magistrate Judge's conclusion that the schedule for religious services is motivated by a compelling government interest. Defendant McKee avers the facility "permits no mixing of prisoners of different security levels for any activity" with the exception that level II prisoners may serve food to level IV prisoners. (Dkt. No. 19, Attachment 2 - affidavit ¶ 7). He also avers that level II prisoners use the program building from 7:30 to 12:30 each day and that level IV prisoners use the building from 12:30 to 15:30 each day. (*Id.* ¶ 13). In his grievance, Plaintiff alleged interaction between level II and level IV prisoners in violation of MDOC protocol. (Dkt. No. 29 - Exhibit A). The MDOC response to the grievance concedes level IV activity does occur in the program building (weight room) during the level II Jumu'ah service. (*Id.*). The MDOC response states that level IV activity in the building begins at 11:45 in an area other than where level II Jumu'ah is held. (*Id.*). The response also asserts "bathroom use is monitored closely by custody staff to ensure there is no contact with level IV prisoners. It is

6

recommended that Sunni's use the restroom facilities in the unit before coming to service so there is little need to use the restroom in building 300." (*Id.*).

The MDOC response to the grievance, admitting that "there is level IV activity in the building which begins at 1145" (Dkt. No 29, Exhibit A - grievance) contradicts Defendant McKee's sworn statement that level IV prisoners do not use the building until 12:30. However, the documents also establish that the prisoners remain separated and that any potential interaction in the restrooms is monitored. The documents do not contradict the Magistrate Judge's conclusion that accommodating Plaintiff's asserted right "would have an adverse impact on guards, other prisoners, and prison resources" and "would ma[k]e an already dangerous prison environment even more dangerous." (R&R at 12).

Plaintiff's fourth objection relates to the prayer schedule. Plaintiff argues the Magistrate Judge did not consider the prayer schedule.[1] (Objection at 4). Plaintiff implies, under RLUIPA and *Cutter*, the government must accommodate an inmate's exercise of his or her religion including his or her ability to attend services. There are several reasons Plaintiff's objection is not persuasive. First, as discussed above, Plaintiff's amended complaint does not state a cause of action under RLUIPA. Second, even if it did, RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and discipline," rather "an accommodation must be measured so that it does not override other significant interests." *Cutter*, 544 U.S. at 722.

---

[1] This Court notes the prayer schedule (which was calculated based on the latitude and longitude of Jackson, Michigan) does show that the time when Jumu'ah is scheduled for level II prisoners is consistent with what Plaintiff has described as traditional Islamic practice. Plaintiff alleges Jumu'ah cannot be held until after the sun reaches its zenith (Zuhr). The prayer schedule shows, in October (of some unknown year), Zuhr occurred between 1:21 and 1:27 p.m. In November, Zuhn occurred between 12:21 and 12:26. This Court assumes the reason for the hour change is not due to some dramatic solar and planetary realignment, but because of daylight savings time. By the middle of December, Zuhr did not occur until after 12:35.

The Supreme Court noted the lawmakers who supported RLUIPA "were mindful of the urgency of discipline, order, safety, and security in penal institutions" and "anticipated that courts would apply the Act's standard with 'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security, and discipline, consistent with the consideration of costs and limited resources.'" *Id.* at 723. (quoting Joint Statement S7775 (quoting S.Rep. No. 103-111, at 10, U.S.Code. Cong. & Admin. News 1993, pp. 1892, 1899, 1900)). Thus, the prayer schedule may establish that the level II Jumu'ah service is not scheduled in compliance with Islamic practice, but it does not undermine the security justification for the scheduled time of the service.

Plaintiff's fifth objection relates to the Magistrate Judge's recommendation that Defendant is entitled to qualified immunity. (Objection at 4-5). Plaintiff's objection relies on RLUIPA and *Cutter* for authority. Plaintiff asserts he offered several alternative means of accommodating his religious needs in his brief opposing Defendant's first motion for summary judgment. Plaintiff argues the reason he has not provided any authority which clearly establishes his right to have Jumu'ah services in the early afternoon is because "'it has never been challenge[d].' This is a land mark issue." (Objection at 5). As has been explained above, the Magistrate Judge applied the proper constitutional test to Plaintiff's complaint because the complaint does not allege a violation of RLUIPA. Plaintiff's objection also supports the Magistrate Judge's conclusion that the right allegedly violated is not clearly established.

Plaintiff's objection here and elsewhere confuses the "clearly established" element of the test for qualified immunity. The issue is not resolved by determining whether the time for Jumu'ah services is clearly established, but by resolving whether the law establishing Plaintiff's right to have

8

Jumu'ah services at a specific time is clearly established. (R&R at 13-15). *See Saylor v. Bd. of Educ.*, 118 F.3d 507, 515 (6th Cir. 1997) ("'For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*.'" (quoting *Lassiter v. Alabama A&M Univ. Bd. of Trustees*, 28 F.3d 1146, 1150 (11th Cir. 1994) (en banc) (emphasis in original))). Defendant McKee, in his brief in support of his second motion for summary judgment, directs attention to the holding in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987). There, the Supreme Court rejected a First Amendment challenge to a prison policy that prevented certain inmates, for security reasons, from attending Jumu'ah service. *Id.* at 350-353.

Plaintiff finally objects to the Magistrate Judge's conclusion that accommodation would adversely impact guards, other prisoners and prison resources. (Objection at 6). Plaintiff's objection does not attempt to undermine the Magistrate Judge's reasoning and does not rely on any of limited documents offered in the action. The portion of the *Cutter* opinion cited by Plaintiff on this point does not undermine the Magistrate Judge's conclusion.[2]

III. CONCLUSION

This Court finds Plaintiff Salaam's objections without merit. The Report and Recommendation (Dkt. No. 81) is adopted over Plaintiff's objections. Defendant McKee is entitled to summary judgment (Dkt. No. 77).

---

[2] Plaintiff cites *Cutter* for the proposition that RLUIPA can be used for a claim or defense in a judicial proceeding to obtain relief from the government. Plaintiff also references the portion of the opinion where the Supreme Court explains that the issue before it is a facial challenge to the constitutionality of the Act rather than an as-applied challenge. *See Cutter*, 544 U.S. at 725.

ORDER

Having reviewed the pleadings, the Report and Recommendation, and Plaintiff Salaam's timely objection to the R&R, the court hereby **OVERRULES** Plaintiff's objections and **ADOPTS** the R&R (Dkt. No. 81).

This case is **TERMINATED.**

This is a final and appealable order.

**IT IS SO ORDERED.**

Date:  February 11, 2008                         /s/ Paul L. Maloney
                                                     Paul L. Maloney
                                                     United States District Judge